## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:06-CR-119 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| BRANDON WRIGHT, | : | |
| | : | |
| Defendant | : | |

### MEMORANDUM

Defendant Brandon Wright moves the court for a sentence reduction under Section 404 of the First Step Act of 2018, § 404, Pub. L. No. 115-391, 132 Stat. 5194, 5222. In a decision dated October 29, 2019, we found that Wright is eligible for relief under the First Step Act but deferred ruling on his motion pending receipt of an addendum to the presentence report and presentencing submissions. Having reviewed the record, the addendum, and the parties' submissions, we decline to exercise our discretion to reduce Wright's sentence.

## I.     Factual Background and Procedural History

A federal grand jury returned an indictment on March 29, 2006, charging Wright and others with various conspiracy and drug-trafficking offenses. (Doc. 1). The grand jury returned a superseding indictment on September 28, 2006, adding several new charges against Wright. (See Doc. 194). Three days before trial was set to begin, the government filed a felony information under 21 U.S.C. § 851(a)(1), subjecting Wright to an enhanced statutory minimum and maximum penalty as a result of a prior felony drug-trafficking conviction. (Doc. 245).

Trial began with jury selection on December 4, 2006. Shortly after the jury was empaneled, Wright entered a guilty plea to two counts of the superseding indictment. (See Doc. 252). Those two counts charged Wright with conspiring to distribute and possess with intent to distribute 50 grams and more of a mixture or substance containing cocaine base, or "crack cocaine," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846 (Count I), and criminal forfeiture under 21 U.S.C. § 853(p) (Count V). (Doc. 194). Wright admitted during the change-of-plea proceeding that he distributed crack cocaine in the Carlisle, Pennsylvania, area between June 2005 and March 2006; that he conducted drug transactions himself as well as through individual runners; that several of the individual buyers were drug-addicted individuals; and that he was responsible for distributing at least 50 grams of crack cocaine. (Doc. 378 at 13:12-15:14).

The presentence report calculated a drug weight of 6.35 kilograms of cocaine base. (PSR ¶ 21). Wright initially objected to the report's drug-weight calculation but withdrew the objection based on the parties' agreement at sentencing that the drug weight "is in excess of 1.5 kilograms of crack cocaine." (Doc. 379 at 3:7-17). The court also sustained a defense objection to application of a two-level firearm enhancement. (Id. at 3:18-4:3). The findings and Guidelines calculations of the presentence report, as modified by the court's rulings, established a range of 360 months' to life imprisonment. (Id. at 6:4-9). The court then departed by four levels, on the government's motion, to establish an advisory Guidelines range of 262 to 327 months' imprisonment. (Id. at 8:12-10:7). After considering the applicable Section 3553(a) factors, the court imposed a sentence of 262 months' imprisonment, five

years of supervised release, a fine of $1,500, and community restitution of $1,500. (Doc. 319).

Wright has since received two sentence reductions pursuant to 18 U.S.C. § 3582(c) based on retroactive application of certain amendments to the Sentencing Guidelines. Specifically, on July 10, 2008, the court reduced Wright's sentence from 262 months to 236 months pursuant to Amendment 706 to the Guidelines. (Doc. 343). On January 27, 2012, the court again reduced Wright's sentence, from 236 months to 213 months, pursuant to Amendment 750 to the Guidelines. (Doc. 364). On May 6, 2015, the court denied Wright's third Section 3582(c) motion, which invoked Amendment 782 to the Guidelines, finding that Wright was resentenced as a career offender in 2012 and was thus ineligible for an Amendment 782 reduction. (Doc. 375). According to the Bureau of Prisons ("BOP"), Wright's current estimated release date is May 18, 2021.

Wright moves the court for a sentence reduction pursuant to Section 404 of the First Step Act. On October 29, 2019, we issued an opinion and order concluding that Wright is eligible for relief under the First Step Act. We deferred ruling on Wright's motion pending preparation of an addendum to the presentence report and receipt of presentencing submissions. The United States Probation Office has prepared an addendum to the presentence report, and both Wright and the government have submitted sentencing memoranda. Wright's motion is now ripe for disposition.

## II.    **Discussion**

The First Step Act of 2018 is a sweeping piece of reformative criminal justice legislation.  Relevant here, the First Step Act authorizes federal district courts to impose a reduced sentence for covered crack cocaine offenses where the statutory penalties of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, §§ 2-3, would have applied had that Act been in effect when the covered offense was committed.  See First Step Act § 404(b), 132 Stat. at 5222.  The First Step Act defines a "covered offense" as "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 . . . of the Fair Sentencing Act . . . , that was committed before August 3, 2010."  Id. § 404(a).  Section 2 of the Fair Sentencing Act, in turn, increased the quantity of crack cocaine required to trigger mandatory minimum penalties under 21 U.S.C. § 841(b)(1)(A)(iii) from 50 to 280 grams and under 21 U.S.C. § 841(b)(1)(B)(iii) from 5 to 28 grams.  See Fair Sentencing Act § 2(a).

We have already determined that Wright is eligible for relief under the First Step Act.  Whether and to what extent a sentence reduction is warranted is a separate question.  As we have previously noted, relief is not automatic.  See First Step Act § 404(c).  Once eligibility is determined, the decision to grant or deny a sentence reduction under the First Step Act is within the district court's discretion.  See id.; see also United States v. Crews, 385 F. Supp. 3d 439, 443-44 (W.D. Pa. 2019) (collecting cases).  In considering whether to exercise this discretion, courts within

4

this judicial district have looked to the Section 3553(a) sentencing factors,[1] see 18

U.S.C. § 3553(a), as well as relevant postsentencing conduct.  See, e.g., United States

v. Surine, No. 4:07-CR-304, 2019 WL 6699914, at *2-4 (M.D. Pa. Dec. 9, 2019); United

States v. Shields, No. 1:08-CR-314, 2019 WL 3003425, at *6-7 (M.D. Pa. July 10, 2019)

(quoting Crews, 385 F. Supp. 3d at 445); see also Pepper v. United States, 562 U.S.

476, 490 (2011) (concluding that postsentencing conduct "bear[s] directly" on a

district court's resentencing calculus).

The addendum to the presentence report finds, consistent with the court's

prior opinion, that, under the retroactive provisions of the First Step Act, Wright's

mandatory minimum term of imprisonment is reduced from 20 years to 10 years.

(Doc. 411 at 1-2).  Because of the Section 851 information, the statutory maximum

remains life imprisonment.  (Id.)  The addendum further finds that, because of

his status as a career offender, Wright's Guidelines range of 292 to 365 months'

imprisonment is unchanged from that established in connection with Wright's

Amendment 750 motion in January 2012.  (Id.)  Wright's current sentence of 213

months' imprisonment reflects reductions pursuant to Amendments 706 and 750

---

[1] The Section 3553(a) factors are (1) "the nature and circumstances of
the offense and the history and characteristics of the defendant"; (2) "the need
for the sentence imposed . . . to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; . . . to afford
adequate deterrence to criminal conduct; . . . to protect the public from further
crimes of the defendant; and . . . to provide the defendant with needed educational
and vocational training, medical care, or other correctional treatment in the most
effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence
and sentencing range recommended by the United States Sentencing Guidelines;
(5) pertinent policy statements issued by the United States Sentencing Commission;
(6) "the need to avoid unwarranted sentencing disparities" among similarly situated
defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

to the Guidelines in addition to a 27% departure from his reduced Guidelines range

for substantial assistance to authorities. (See Docs. 343, 364; see also Doc. 411).

Wright's counsel invokes several Section 3553(a) factors as well as Wright's

post-offense rehabilitation in seeking a reduced sentence. (See Doc. 412 at 9-16).

Wright asserts many of the same arguments that were previously raised before and

considered by the undersigned. For example, Wright again notes that his criminal

conduct was motivated in part by the financial stress of caring for five children and

a sister diagnosed with AIDS, (see Doc. 307 at 1-2; Doc. 412 at 9, 13); that he pled

guilty shortly after his jury trial began, accepted responsibility, and cooperated with

authorities, (see Doc. 307 at 9-10; Doc. 412 at 11); and that he has what he describes

as "minimal" criminal history despite being labeled a career offender, (see Doc. 307

at 11-12; Doc. 412 at 14). We considered and accounted for these considerations

during Wright's original sentencing. The sentence imposed reflects a careful

balancing of Wright's acceptance and cooperation, and his explanation for his

offense conduct, against his offense conduct and extensive criminal history.[2]

---

[2] We again reject Wright's characterization of his criminal record as
"minimal." At his original sentencing, Wright sought a downward departure,
arguing that his career offender status substantially overstated the extent of
his criminal history. (See Doc. 307 at 11-12). We denied his request, noting that,
over the course of a decade, he had accumulated three convictions for controlled-
substance offenses in addition to convictions for attempted possession of cocaine,
resisting arrest, reckless driving, assault, escape, and driving under the influence.
(Doc. 379 at 7:23-8:12). In weighing the salient Section 3553(a) factors, the court
characterized Wright's criminal record as "extensive," noting that he had been
involved in the criminal justice system since age 17; that the instant conviction
represented his fifth drug-delivery conviction in the past 14 years; and that he had
committed the instant offense conduct while on state parole. (Id. at 17:11-22). Our
analysis of Wright's criminal history remains unchanged, and we incorporate it in
full into this discussion.

Wright's only new arguments concern his post-sentencing rehabilitative efforts and his assertion that denying a reduction would create an unwarranted sentencing disparity between Wright and codefendant Rafel Brothers. For its part, the government underscores the nature of Wright's offense conduct, the harm done, and the extent of Wright's criminal record.

We conclude that the goals of sentencing require that Wright's existing 213-month sentence remain intact. We do not discount Wright's post-sentencing rehabilitative efforts. Wright's counsel notes that Wright has obtained his GED while incarcerated and has completed a variety of programs during his term of imprisonment, including vocational training and life skills courses. (See Doc. 412 at 9-10). These efforts are commendable, and they will serve Wright well when he is released in approximately 15 months. But these efforts do not counterbalance the seriousness of Wright's instant offense conduct, including the quantity of crack cocaine involved and Wright's leadership role in the drug-trafficking conspiracy; the substantial harm that flowed from Wright's conduct; and the extent and nature of his criminal history. At the original sentencing, we remarked that the length of the sentence in this case was necessary to reduce the likelihood of recidivism, and we reaffirm that finding today. (See Doc. 379 at 17:20-25).

We also reject Wright's claim that a sentence reduction is necessary to remedy a perceived sentencing disparity between Wright and Brothers. Last year, the court granted Brothers' unopposed motion for relief under the First Step Act and reduced his sentence of imprisonment from 188 to 135 months. (See Doc. 396). Wright points to certain similarities between himself and Brothers—that both have

7

been designated career offenders, both participated in the same conspiracy, and both assisted law enforcement—and contends that these similarities mandate a reciprocal reduction for Wright. (Doc. 412 at 15-16).

This argument ignores crucial distinguishing context—specifically, the defendants' respective degrees of culpability. Brothers was a street-level dealer. Wright, by contrast, was a leader of the conspiracy, and he received a sentencing enhancement based on that aggravating role. (PSR ¶ 24). Wright admitted during his change-of-plea hearing that he used other individuals to deliver drugs for him. (See Doc. 378 at 13:12-15:14). According to the presentence report, Wright had two drug "runners" who worked on his behalf distributing crack cocaine. (PSR ¶ 24). Wright has never disputed this characterization of his role in the conspiracy. (See Doc. 307 at 5-6; see also Doc. 412). Wright's sentence is justifiably higher than Brothers' based on our assessment of the salient Section 3553(a) factors and Wright's more culpable role in the conspiracy.

## III.   Conclusion

For the reasons set forth above, we decline to exercise our discretion under the First Step Act to reduce Wright's sentence. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        February 6, 2020